IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

NELSON A. YOUNG,                      )
                                      )
        Petitioner,                   )
                                      )
        v.                            )        NO. 12-3094
                                      )
RANDY PHISTER,                        )
                                      )
        Respondent.                   )

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Petition Under 28 U.S.C. § 2254 for

Writ of Habeas Corpus by a Person in State Custody [d/e 1] filed by

Petitioner Nelson A. Young.  The Respondent has filed a Response [d/e 10]

to the § 2254 Petition and has attached the relevant portions of the state

court record.  Pending also is the Petitioner's Motion to Stay [d/e 11].

## I. BACKGROUND

### (A)

On August 22, 2006, in the Circuit Court of Morgan County, Illinois,

a jury convicted the Petitioner, Nelson A. Young, of first degree murder for

stabbing and killing Eva Marie Davis.  He was sentenced to a term of 40 years imprisonment for that offense.  *See People v. Young*, 381 Ill. App.3d 595, 596 (4th Dist. 2008).

On direct appeal, the state appellate court summarized the facts of the Petitioner's crime and the evidence presented at trial.  "State court findings, including credibility determinations, are presumed correct on federal habeas review, unless the petitioner rebuts those findings with 'clear and convincing evidence.'" *Woolley v. Rednour*, 702 F.3d 411, 426-27 (7th Cir. 2012) (quoting 28 U.S.C. § 2254(e)(1)).  The appellate court summarized the facts heard by the jury:

> On July 21, 2005, the State charged defendant with first degree murder under section 9–1(a)(1) of the Code (720 ILCS 5/9-1(a)(1) (West 2004) (knows such acts will cause death)), alleging that on July 19, 2005, defendant stabbed Eva Mae Davis, killing her, knowing that his act created the strong probability of death or great bodily harm. On July 26, 2005, the charge was amended to first degree murder under section 9–1(a)(2) of the Code (720 ILCS 5/9–1(a)(2) (West 2004) (knows that such acts create a strong probability of death or great bodily harm)), alleging that on July 19, 2005, defendant stabbed Eva Mae Davis, killing her, knowing that his act created the strong probability of death or great bodily harm, correcting the citation to be consistent with the charge alleged.

On June 29, 2006, the State filed a motion *in limine* to admit, *inter alia*, prior convictions of aggravated battery and aggravated assault and testimony from the victim of that assault. Defendant had pleaded guilty on both charges, the battery was committed with a knife, the assault victim was to testify that defendant threatened the victim with a knife, and defendant threatened that he was going to kill the victim.

On July 6, 2006 a hearing was held on the motion *in limine*. The State argued that the prior convictions and testimony should be admitted for reasons other than a propensity to commit crimes, that is, reasons such as intent, *modus operandi*, motive, and absence of mistake or accident. Defendant argued that the crimes were not similar enough to show *modus operandi* because, defendant asserted, the prior crimes were only similar to this charge in that a knife was used each time. Defendant argued as a result, the probative value would be outweighed by the prejudicial effect. Defendant conceded that if accident was asserted as a defense, the prior convictions might be admissible to show lack of accident, but defense counsel said no such defense was planned.

The trial court denied the motion, stating it would not allow the State to present defendant's prior convictions during the State's case in chief. The court cautioned, though, that were defendant to testify that the stabbing was a accident or that defendant otherwise lacked intent, the court would allow the State to use the evidence at issue to rebut defendant's testimony.

On July 11, 2006, the jury was selected, and the trial commenced the next day. The evidence showed that on July

19, 2005, defendant placed calls to his brother, John Young, and cousin, Joe Morgan, both in North Carolina.  He told each that defendant and his girlfriend, Eva Mae Davis, had struggled after Eva had charged at defendant with a knife and that he had accidentally stabbed her in the heart, killing her.  Defendant asked each for money so defendant could travel to North Carolina.

Morgan went to his local sheriff's office ro report the crime.  The North Carolina sheriff's office contacted the Jacksonville police department.  Officers from Jacksonville went to defendant's residence, where they found the victim's body in a bed, covered with a sheet.

On July 19, 2005, Illinois State Police officer Michael Narish, a crime-scene investigator, was called to the scene to collect evidence.  He testified that the victim's clothing did not have any blood on it and her remains appeared to have been cleaned, except for the bottom of her feet.  In processing the scene, Officer Michael Narish found additional evidence, including a filet knife.

Doctor Travis Hindman, a forensic pathologist, testified that he performed the victim's autopsy.  Dr. Hindman testified the victim had a stab wound to her chest, which went through her lung and cut her heart.  In his opinion, this wound was the cause of death, and it was possible that the wound could have been made with the filet knife found by Officer Michael Narish. The victim also has cuts on her left leg and left hand consistent with the sort of wounds a person would receive when the person is in a defensive posture, though Hindman was not certain the wounds were sustained as the victim defended herself.  The

4

blood on the bottom of her feet indicated that she was able to walk after being stabbed. Chemical tests also showed the presence of cocaine and marijuana in the victim. Dr. Hindman testified that marijuana could stay in the body for days while cocaine would be eliminated within hours.

Tracy Sulwer, an employee of the Illinois State Police, Division of Forensic Services, testified that she found defendant's bloody fingerprints on a phone and doorknob taken from the crime scene. Sulwer also testified that the only print she could find on the knife was from the defendant.

Amanda Humke, a forensic scientist with the Illinois State Police crime lab, testified that she did deoxyribonucleic acid (DNA) analysis on blood samples found during the investigation. Humke testified that the DNA test performed on blood found on a telephone, doorknob, and shirt collected at the scene showed that the blood was the victim's, while the shirt's tag had a mixture of blood consistent with the victim's and defendant's DNA.

Michelle Montgomery testified that she had a father-daughter-like relationship with defendant. Montgomery had dated defendant's son, and defendant had dated Montgomery's mother. Although neither of these relationships continued to July 2005, Montgomery and defendant had continued to keep in almost daily contact with each other. Montgomery testified that defendant had admitted, prior to the victim's death, to hitting the victim. Montgomery also testified that defendant told her that he would have to leave the victim or hurt her really bad, at one point saying that he would have to kill the victim to get away from the relationship.

Montgomery testified that defendant called her at about 7:30 a.m. on July 19, 2005, and asked her if she would keep in touch no matter what happened. Defendant also told her that he needed to leave town. Montgomery could hear the defendant and the victim arguing in the background. Montgomery told defendant that she was still in bed and would talk to him later. Montgomery tried to call defendant back but did not get through to him. Defendant returned Montgomery's phone call around 1:30 p.m. that day and said that he was trying to get in touch with his family in North Carolina. Defendant wanted Montgomery's help to get defendant to the bus station in Springfield. Defendant called back again about 2:15 or 2:20 p.m. and said that he was on his way to Montgomery's house, where he arrived about 2:30 p.m. Once there, defendant ate some food Montgomery made for him and made three or four phone calls. Montgomery knew that defendant placed the first of the phone calls to his daughter, Vanessa, telling his daughter that he was running out of time and needed to get out of town. Montgomery testified she did not know who else defendant called or what he said.

Montgomery testified that while defendant was still at her home, Montgomery received a telephone call from her sister. She told Montgomery defendant had killed the victim. Montgomery told defendant he had to leave, and defendant responded that only Montgomery could help him at that point, and he was going to explain but did not did not know how. Later the same day, there was a loud knock at Montgomery's door. Montgomery's boyfriend answered the door and about 12 people charged in, including the victim's family members. They asked where defendant was, found him, dragged him outside, fought with him, and the police came.

Defendant testified in his own defense.  He testified that he and the victim had dated for about a year, occasionally living together, and that their relationship had ups and downs. Defendant testified he hit the victim two or three times on one occasion, but he described it as a mistake.  Defendant explained the victim woke him up from being passed out drunk. Defendant testified that they both used crack cocaine regularly and smoked it together on July 18, 2005.  The victim left defendant's house sometime that night.  On July 19, 2005, defendant left in the early morning to look for the victim so he could get his bicycle from her and ride to the store to get beer. He did not find her.  He went to the store, bought a bottle of beer, and returned home to find the victim there.

Defendant testified that he went into the bedroom. Defendant and the victim had an argument because he wanted and go to sleep, and she wanted to go back to her house. Defendant testified that one of the victim's family members, L.A. Jackson, visited with the victim, and when Jackson left, the victim was upset and anxious to leave the house.  The victim said that she had something to do and would do it with or without defendant.  Defendant also testified that she had a sock tied around her leg in the area of the cut that Dr. Hindman testified about.  Defendant said that he asked the victim about her leg, and she had cut her leg at her house.  Defendant testified after that exchange, he heard a loud noise and went to the kitchen finding that the victim was attempting to leave the house through the back door.  She had a knife in her hand.

Defendant testified that he told the victim to give him the knife.  Defendant testified the victim charged him, drawing the knife back to the level of her head with her right hand while telling defendant he better get back.  Defendant grabbed the

7

victim's right arm with his left hand and took the knife from her.  Defendant testified that they wrestled over the knife, she grabbed him, he fell with his back against her, then he turned around to find the knife was in her chest.  The victim told defendant to call an ambulance, then she fell and lost consciousness.  Defendant testified that he pulled out the knife out of her chest, carried her to his bedroom, attempted cardiopulmonary resuscitation on her, and found she was already dead.  He testified that, because she had died so quickly, he did not call an ambulance.

Defendant testified that he then cleaned himself up, and cleaned her body, put new clothes on her body, and covered it with a sheet.  Defendant called his daughter and Montgomery from his house.  At about 1:30 p.m., defendant rode his bicycle to Montgomery's house.   Defendant testified that once at Montgomery's house he called his daughter a second time, and he called aa sister, a brother, and cousin, telling each what was happening and asking for money.  Defendant testified that he was scared to call the police because he feared the victim's family would hear about what had happened and kill him before the police arrived.  Defendant testified that he was hiding in Montgomery's kitchen closet when about 12 people, including members of the victim's family, came in the house, grabbed him, and beat him.  He did not remember anything else until three days later when he was in jail.

After the defense rested, the State renewed its motion *in limine* to admit the previous convictions in evidence and permit testimony by the victim of the prior assault.  The State based its argument on the defendant's assertion that the stabbing was an accident.   The trial court allowed the State's motion with respect to the prior convictions, which were stipulated to, but

did not allow the victim of the previous assault to testify.

On July 14, 2006, both sides presented closing arguments. The jury deliberated for just under two hours before returning a verdict of guilty on the amended charge of first degree murder. On August 22, 2006, the trial court sentenced defendant to 40 years' imprisonment. This appeal followed.

*Young*, 381 Ill. App.3d at 595-600.

## (B)

The Petitioner appealed, claiming that the trial court erred in allowing the jury to hear evidence of his prior convictions. On April 3, 2008, the state appellate court affirmed. The Petitioner filed a petition for leave to appeal (PLA) in the state supreme court. The PLA was denied on September 24, 2008.

On April 20, 2009, the Petitioner filed a post-conviction petition in the Circuit Court of Morgan County pursuant to 725 ILCS 5/122-1, *et seq.*, alleging that counsel rendered ineffective assistance at trial by entering into stipulations that allowed the Petitioner's prior convictions into evidence. He also alleged that Counsel was ineffective for failing to:

(a) use the State's medical report that showed the victim had cocaine and marijuana in her system to petitioner's advantage;

(b) call an expert witness to testify about the victim's mental state at the time of the crime;

(c) raise a "voluntary intoxication" defense;

(d) conduct a reasonable investigation that could have discovered evidence supporting a "voluntary intoxication" defense;

(e) timely object during the State's closing argument;

(f) argue that the medical reports supported petitioner's self-defense theory; and

(g) properly present those issues in petitioner's post-trial motion.

The Petitioner also asserted that appellate counsel was ineffective for failing to raise and argue the above issues in his direct appeal. On June 9, 2009, the state circuit court summarily dismissed the petition as patently without merit. *See* Doc. No. 10, Ex. H.

The Petitioner appealed, claiming that the post-conviction trial court erred in summarily dismissing his petition because his trial and appellate counsel arguments had raised the gist of a meritorious constitutional claim. On April 18, 2011, the state appellate court affirmed, holding that

10

Petitioner's testimony that the stabbing was an accident left counsel with no alternative but to work with that defense as a strategy. Thus, the court held that any complaint by the Petitioner that counsel's strategic decisions were deficient was "not only unpersuasive, it is frivolous and patently without merit." *See* Doc. No. 10, Ex. L, at 6-7.

In his PLA, the Petitioner asserted that trial counsel rendered ineffective assistance (a) by failing to investigate possible defenses in light of the facts of the case; and (b) because he "could have" stipulated to the facts and not called petitioner to testify, given that petitioner's testimony allowed the State to cross-examine about his "prior bad acts." The PLA was denied on September 28, 2011. *See* Doc. No. 10, Ex. 11.

On March 28, 2012, the Petitioner filed this § 2254 petition. The petition raises the following claims:

(a)     the trial court erred in dismissing petitioner's post-conviction when he raised the gist of a constitutional claim;

(b)     trial counsel rendered ineffective assistance by "stipulating" that if he raised an accident defense, the

State would be allowed to present evidence of petitioner's prior convictions; and

(c)    appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal.

As directed, the Respondent has filed an Answer to the Petition.

Upon reviewing the Petition, the Respondent's Answer and the Attachments thereto, the Court concludes that Petitioner's claims are not barred by non-retroactivity; the Petition is timely, and the Petitioner has exhausted his state court remedies for the claims.

## II. DISCUSSION

### A. Claim One

The Petitioner's first claim is that the trial court improperly dismissed his state post-conviction petition because it raised the gist of a constitutional claim.  The Petitioner alleges that he was deprived of effective assistance of counsel based on something counsel did not do.  He contends that the trial court dismissed a meritorious claim which another attorney could have effectively presented.

A petitioner for habeas relief under § 2254 must establish that he is in custody pursuant to a violation of the Constitution, laws or treaties of the United States. Thus, a federal habeas court does not reconsider state court determinations on state-law questions. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "Violations of state laws are cognizable only if they resulted in fundamental unfairness and consequently violate a petitioner's constitutional rights." *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003).

The Petitioner is asking the Court for habeas relief based on a state court's application of its own post-conviction standards. This does not provide a basis for federal habeas relief. *See* 28 U.S.C. § 2254(a). "Unless state collateral review violates some independent constitutional right . . . errors in state collateral review cannot form the basis for federal habeas corpus relief." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996).

Accordingly, the Court concludes the Petitioner's claim that the state trial court erroneously applied post-conviction standards is not cognizable on federal habeas review.

B. Claim Two

13

(1)

The Petitioner's second claim is that trial counsel was ineffective for stipulating that, if he presented an accident defense, the State could introduce the fact of the Petitioner's prior convictions.

Before seeking federal habeas relief, a petitioner must exhaust his state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). Therefore, the federal claims must be fairly presented to the state courts. *See Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id*. at 1026. This Court cannot consider procedurally defaulted claims "unless the petitioner can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice." *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010) (internal quotation marks and citation omitted). A claim is procedurally defaulted if a petitioner does not assert in the state courts a particular factual basis for the ineffective assistance claim. *See Pole v. Randolph*, 570 F.3d 922, 935

(7th Cir. 2009). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis*, 390 F.3d at 1025-26.

It appears that Petitioner's claim asserts that counsel erroneously agreed with the State that, if counsel were to present an accident defense, then the State could introduce his prior convictions into evidence, thus damaging his best defense. The Petitioner claims, "My attorney was Ineffective when he entered into an agreed stipulation with the State about the Defense of an accident." *See* Doc. No. 1, at 5. As the Respondent notes, there is no record of a formal "stipulation" between the parties. Presumably, the Petitioner is referring to counsel's acknowledgment of the trial court's statement that if the defense of an accident or lack of intent were presented, then the State would be allowed to present evidence of the Petitioner's convictions.

In his post-conviction petition, the Petitioner raised the argument about a "stipulation" that his convictions would be admissible if he raised

an accident defense.  *See* Doc. No. 10, Ex. G, at 237.  The argument was also raised in the Petitioner's PLA to the state supreme court, wherein he criticized the Petitioner's alleged stipulation and argued that counsel should have contended that the trial court's decision was wrong.  *See* Doc. No. 10, Ex. M.  However, because the argument was not raised in the state appellate court on post-conviction appeal, it is procedurally defaulted.

A review of his brief before the appellate court shows that Petitioner argued not that counsel improperly agreed that an accident defense would allow the State to introduce proof of his prior convictions, but that counsel was ineffective for actually raising an accident defense knowing such a strategy would mean that the jury would learn about his prior convictions. The appellate brief stated in relevant part:

> The trial court ruled that only if an accident was the defense would the state be allowed to present evidence of petitioner's prior conviction.  Despite this clear ruling to petitioner's benefit, defense counsel made accident his main defense.  The decision rendered counsel ineffective.

*See* Doc. No. 10, Ex. I, at 24.  Based on the foregoing, it is apparent that Petitioner did not complain that his attorney should have argued against

16

(rather than agree with) the trial court's ruling on the admissibility of the proof.  Rather, the Petitioner criticizes counsel pursuing that defense after having been warned that such evidence would be admissible if he presented an accident defense.  The Petitioner claims he was prejudiced because such a strategy was certain to lose.

Upon concluding that Petitioner did not raise his current claim in one complete round of state collateral review, the Court finds that the claim is therefore defaulted.

(2)

A court reviewing a habeas petition may only consider defaulted claims if the petition establishes cause for failure to raise them at the proper time and actual prejudice which ensued from that failure.  *See Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999).  Generally, to establish cause for a procedural default, a petitioner must show that there was "some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986).  "Absent such a showing, a defaulted claim is reviewable only if refusal to consider it would result in a

17

'fundamental miscarriage of justice,' that is where 'a constitutional violation has probably resulted in a the conviction of one who is actually innocent. . . .'" *Rodriguez*, 193 F.3d at 917 (quoting *Murray*, 477 U.S. at 495-96). Thus, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez*, 193 F.3d at 917.

The Petitioner has not shown the existence of any external impediment which prevented him from raising the claim before the appellate court. Moreover, the Petitioner has not shown that a fundamental miscarriage of justice would occur if the Court refuses to review the defaulted claim.

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the United States Supreme Court held that cause to excuse a defaulted ineffective assistance of counsel claim could be established if (1) the petitioner proceeded pro se in the initial-review stage of state post-conviction proceedings; or (2) counsel at that stage was ineffective for failing to raise the defaulted trial counsel claim. *See id*. at 1318.

The Court concludes that *Martinez* is not applicable to the Petitioner's

18

case.  First, it applies only in States that do not permit petitioners to raise ineffective assistance of counsel claims on direct review.  *See id*. at 1313 (observing that Arizona's state collateral relief system "does not permit a convicted person alleging ineffective assistance of trial counsel to raise that claim on direct review," but only in "state collateral proceedings").  Illinois allows individuals to raise ineffective assistance of counsel on direct appeal. *See People v. Foster*, 168 Ill.2d 465, 480-81 (1995).

Second, the facts underlying the Petitioner's ineffectiveness claim were discussed in open court and are part of the record.  Therefore, the claim could and should have been raised on direct appeal.  The Court in *Martinez* noted that ineffective assistance claims often depend on evidence outside the record and thus sometimes should not occur on direct appeal. 132 S. Ct. 1318.  Because of the information that was part of the record, this Court has no equitable basis to expand the reach of *Martinez*, which applies only to claims that can be brought in the first instance in a petitioner's initial-review collateral proceeding.  *See id*. (discussing the circumstances of how a prisoner may establish cause for default at the

initial-review collateral proceeding stage).

Third, *Martinez* does not apply because the default of Petitioner's ineffective assistance of counsel claim did not occur in his initial-review collateral proceeding. It occurred in his subsequent post-conviction appeal, after the claim was initially raised in his post-conviction petition. Therefore, the Petitioner did not pursue the claim through one complete round of state court review, as required by federal law. In *Martinez*, the Supreme Court was concerned that by omitting an ineffective assistance argument in the initial post-conviction petition (when that was the only means in which to raise the claim), a petitioner would be foreclosed from raising such a claim at all in state court, which would have the inequitable effect of depriving him of the opportunity to ever raise that argument in state court. *See Martinez*, 132 S. Ct. at 1318. That concern is not present in this case. The Petitioner did raise the ineffective assistance claim in his initial-review collateral proceeding. The claim is defaulted because it was not properly presented to the appellate court. The inequitable result contemplated in *Martinez* did not occur here. Accordingly, even if *Martinez*

did apply to Illinois post-conviction proceedings, it does not excuse the Petitioner's default in this case. *See Martinez*, 132 S. Ct. at 1320 (expressly limiting holding to initial-review collateral proceedings).

Accordingly, the rule in *Martinez* does not excuse the Petitioner's defaulted claims. The Petitioner has not established cause for the failure to consider the defaulted claims and thus has not shown any prejudice. Because the Petitioner has not even raised an actual innocence argument, the Court concludes that there has been no miscarriage of justice which would excuse the default.

Accordingly, the Petitioner is not entitled to habeas relief on the claims that relate to the introduction of his prior convictions.

C. Claim Three

The Petitioner's third ground is that his appellate counsel was also ineffective in that he did not argue or failed to adequately brief and argue trial counsel's ineffectiveness on direct appeal. The Respondent construes the claim as asserting that trial counsel was ineffective not just for agreeing to the trial court's ruling, but also for pursuing such a defense based on the

21

court's ruling and failing to inform the Petitioner that such proof would be admissible under those circumstances.

## (1)

Section 2254 bars relief for any ineffective assistance of counsel claim that was fairly presented to, and adjudicated on the merits by, the Illinois Appellate Court. Unless the state court's decision was either "contrary to," or an "unreasonable application of," Supreme Court precedent or was "based on an unreasonable determination of the facts," the petition must be denied. *See* 28 U.S.C. § 2254(d)(1)-(2). The petitioner "ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state-court decision that is reasonable cannot be disturbed. *See Hardy v. Cross*, 132 S. Ct. 490, 495 (2011).

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel was deficient in his performance which resulted in prejudice to his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must show that counsel's performance "fell below an

22

objective standard of reasonableness." *Id*. at 688.  To demonstrate prejudice, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A petitioner:

> must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state appellate court] applied *Strickland* to his case in an objectively unreasonable manner.

*Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (internal citations omitted).

The Court has reviewed the decision of the state appellate court, which properly sets forth the relevant legal authority.  Moreover, the state appellate court reasonably applied the performance prong of *Strickland*.  The Petitioner was admonished that testifying was his decision.  He chose to exercise his right to testify and claimed that the stabbing was an accident.  This testimony "locked counsel into presenting the defense of accident." *See* Doc. No. 10, Ex. L, at 6.  Given the Petitioner's decision to testify as to accident, it appears that counsel's only realistic strategy was to pursue that

23

defense.

The Petitioner's claimed lack of knowledge that the State could introduce evidence of his prior convictions if he alleged the stabbing was an accident is not supported by the record. He was warned by counsel and the court that the prosecution could use such evidence if the Petitioner were to testify that the crime was an accident. Counsel explained while in the Petitioner's presence:

> In allowing this evidence [describing *People v. Illgen*, 583 N.E.2d 515 (Ill. 1991) a case the State cited that allowed bad act evidence before the jury] the [supreme] court noted that the principal issue at trial is whether the defendant shot the victim accidentally. Now, I freely admit that if [petitioner] is to take the stand and testified, gee, this is, this was an accident, I didn't mean to stab her, we, you know, she, I had a knife and she fell on it, then those cases of that, or those convictions that the State wishes to introduce might come in. But we don't anticipate any such testimony by [petitioner]. Absent that testimony, I don't think these prior convictions should be admitted.

*See* Doc. No. 10, Ex. O at Vol. III, at R140. The court agreed with counsel and determined that the state could not use the evidence unless the Petitioner testified as to accident. In the Petitioner's presence, the court

24

further explained the circumstances in which the testimony would be admitted:

> I will say, however, and I think [trial counsel's] already referred that, if [petitioner] were to testify and if the State were to on rebuttal or on cross attempt to have those cases admitted to negate the mistake, accident, or inadvertence or absent an intent by [petitioner], then I, I am going to tell you now that I would probably allow the evidence of the two cases to come in.

*Id.* at 144. The record shows that Petitioner was aware of the consequences of testifying as to accident. Nevertheless, based on his attorney's statement, it appears that Petitioner changed his mind and testified that the stabbing was an accident.

Because the Petitioner has not established that the state appellate court's application of *Strickland*'s performance prong was factually or legally unreasonable under either § 2254(d)(1) or (2), the Court concludes he is not entitled to habeas relief.

## (2)

Even if counsel's performance was objectively unreasonable, the Petitioner still would not be entitled to habeas relief because he cannot

show that the state appellate court's decision unreasonably applied *Strickland*'s prejudice prong.   A habeas petitioner is not able to show prejudice when the evidence against him is overwhelming.   *See Allen v. Chandler*, 555 F.3d 596, 602-03 (7th Cir. 2009).

The state appellate court determined that the evidence of the Petitioner's guilt of first degree murder was overwhelming.   A forensic pathologist testified that the victim had cuts on her left leg and left hand which were consistent with defensive wounds.   An Illinois State Police Division of Forensic Services official testified that the only print found on the knife was the Petitioner's.   Michelle Montgomery, who said that she had a "father-daughter" relationship with the Petitioner, testified that Petitioner had previously hit the victim.   Moreover, the Petitioner had admitted to her that he "would have to kill the victim to get away from the relationship."   *People v. Young*, 381 Ill. App.3d 595, 597-98 (4th Dist. 2008).   Thus, there is ample evidence in the record tending to show that the murder was not an accident.

Based on the foregoing, the Court also concludes that Petitioner

26

cannot meet *Strickland*'s prejudice prong.

(3)

To the extent that Petitioner is alleging that appellate counsel was ineffective, that claim has been procedurally defaulted because it was not raised through one complete round of review before the state courts.  In *Baldwin v. Reese*, 541 U.S. 27 (2004), the United States Supreme Court held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id*. at 32.

By merely asserting that his appellate attorney failed to raise "procedural errors" on appeal, the Court concludes that Petitioner in his post-conviction PLA did not fairly alert the Illinois Supreme Court that he intended to argue that appellate counsel was ineffective for failing to challenge trial counsel's performance.  In simply referencing other documents that may have contained the bases for his claim, the Petitioner

27

failed to preserve his ineffective assistance of appellate counsel claim. Because the post-conviction PLA did not fairly present the claim to the Illinois Supreme Court, the Petitioner has procedurally defaulted it.

### D. Motion to Stay

The Court previously noted that Petitioner filed also filed a motion to stay these proceedings. If a petitioner provides good cause, a federal court has the discretion to stay the § 2254 proceeding. *See Brown v. Watters*, 599 F.3d 602, 608 (7th Cir. 2010). One example of good cause is that petitioner has failed to exhaust his state court remedies. *See id*.

In this case, the Petitioner has exhausted his state court remedies. Because no apparent purpose would be served by staying these proceedings, the Petitioner's motion will be denied.

## III. CONCLUSION

Based on the foregoing, the Court concludes that Petitioner is not entitled to relief under § 2254. An appeal may be taken if the Court issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A). Because the

Petitioner has not "made a substantial showing of the denial of a constitutional right," *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Habeas Corpus Cases Under Section 2254.

Ergo, the Petition of Nelson A. Young Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [d/e 1] is DENIED.

The Petitioner's Motion for a Stay [d/e 11] Is DENIED.

The Court declines to issue a certificate of appealability pursuant to Rule 11 of the Rules Governing Habeas Corpus Cases Under Section 2254.

ENTER: May 10, 2013

FOR THE COURT:

*s/Richard Mills*
Richard Mills
United States District Judge

29